# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**THOMAS HAMACHER, IYAIRIS TOLEDO FUENTES** ***as parent of I.H.*****,**
**and Bad Dog Racing, Inc.**

**Plaintiff,**

**v.** **Case No: 6:25-cv-2307-CEM-DCI**

**ORLANDO KART CENTER, LLC,**

**Defendant.**

______________________________________/

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Plaintiffs' Partially Opposed Motion for the Approval of Minor's Settlement (Doc. 32)** |
| **FILED:** | **August 26, 2026** |

**THEREON** it is **Recommended** that the motion be **GRANTED.**

### I. Background

On or about December 2, 2025, Thomas Hamacher; Iyairis Toledo Fuentes, as parent of I.H; and Bad Dog Racing, Inc.[1] (collectively Plaintiffs) filed a complaint pursuant to the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act (FCRA) against Orlando Kart Center,

---

[1] Plaintiffs allege that Thomas Hamacher is a disabled veteran and is a qualified person with a disability as defined pursuant to the ADA and the Florida Civil Rights Act. Doc. 1 at 2. Plaintiffs state that I.H. is the minor son of Thomas Hamacher and Iyairis Toledo Fuentes and that I.H. is not disabled but a companion as defined by the ADA to Thomas Hamacher. *Id.* at 2. Plaintiffs provide that Bad Dog Racing is an entity used to operate and manage I.H.'s racing efforts and that Iyairis Toledo Fuentes is the president of the corporation. *Id.* at 3.

LLC (Defendant). Doc. 1. Plaintiffs also bring claims for intentional infliction of emotional distress, intentional interference with contractual relationship, intentional interference with an advantageous business relationship, and wrongful eviction. *Id.* Plaintiffs' claims relate to Defendant's operation of a kart racing center and its alleged denial of reasonable accommodations to Thomas Hamacher. *Id.* at 3 to 14. Specifically, Plaintiffs claim that Thomas Hamacher requested from Defendant: (1) permission to use an electric trike or electric wheelchair on the racetrack grid; (2) access to a second floor viewing mezzanine; and (3) permission to keep Plaintiffs' truck and toy hauler inside Defendant's paved parking lot during the week. *Id.* at 6, 8, 9, 10, 12. Plaintiffs claim that Defendant denied the requests and "in retaliation for [Thomas Hamacher's] ongoing protestations, [Defendant] would not provide another location even temporarily due to [Thomas Hamacher's] disabilities." *Id.* at 11 to 12.

Plaintiffs also allege that Defendant subjected them to retaliation by terminating Plaintiffs' agreements to rent a garage unit near the racetrack and to rent a spot on Defendant's dirt lot to park their toy hauler. *Id.* at 12. As a result of the alleged discrimination and retaliation, Plaintiffs claim that I.H., a minor, was unable to participate in a race starting on January 10, 2025. *Id.* at 13.

On May 18, 2026, Plaintiffs filed a Notice of Settlement and informed the Court that the parties were in the process of drafting a final settlement agreement and would file an unopposed motion to approve I.H.'s settlement. Doc. 31. Plaintiffs have since filed the Partially Opposed Motion for the Approval of Minor's Settlement. Doc. 32 (the Motion). Plaintiffs have also filed the settlement agreement (Doc. 32-1, the Agreement) and an amendment to the settlement agreement (Doc. 32-2, the Amendment) in support of the Motion.

Defendant has filed a Response to the Motion and requests that the Court defer ruling on the Motion until a guardian *ad litem* is appointed and the guardian can advise the Court on whether

the settlement is in I.H.'s best interests. Doc. 34. Defendant also requests that the Court require the net proceeds of the settlement to be placed in a restricted depository account and that the restrictions be disclosed to the Court. *Id.* at 3.

**II. Legal Standard**

Federal law does not speak to the standard the Court should employ in determining whether to approve a settlement agreement involving a minor. *See Meyers v. U.S.*, 2014 WL 5038585, at *2 to 3 (M.D. Fla. Sept. 29, 2014). "When confronted with a gap in a federal statutory scheme, federal courts may, depending on the circumstances, choose to adopt state law rather than craft a uniform federal rule." *Id.* (citing *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979)). "Courts in this District have elected to apply Florida Statute § 744.387(3)(a) when addressing settlement agreements involving a minor with claims arising under federal law." *Moreira v. Aereas*, 2023 WL 3353260, at *1 (M.D. Fla. Apr. 17, 2023), *report and recommendation adopted by*, 2023 WL 3339038 (M.D. Fla. May 10, 2023). Accordingly, the undersigned will consider section 744.387(3)(a) to address the Motion.

Pursuant to section 744.387(3)(a), "[n]o settlement after an action has been commenced by or on behalf of a ward shall be effective unless approved by the court having jurisdiction of the action." Court approval of a settlement agreement involving a minor requires a determination that "the settlement will be for the best interest of the ward." Fla. Stat. § 744.387(1). "'In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion of the parties.'" *In re Smith*, 926 F.2d 1027, 1028–1029 (11th Cir. 1991) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). The purpose of court approval "is to protect the interests of the minor and

the guardian and to ensure that any release given on behalf of the minor is legally effective." *McLaughlin v. Lara*, 133 So. 3d 1004, 1006 (Fla. 2d DCA 2013) (citing Fla. Stat. § 744.387).

Additionally, the Court may authorize the natural guardians "to collect the amount of the settlement or judgment and to execute a release or satisfaction." Fla. Stat. § 744.387(3)(b). The Court may appoint a guardian *ad litem* to represent a minor's interest before approving a settlement that is valued at more than $15,000, if the Court deems such appointment necessary. Fla. Stat. § 744.3025(1)(a). If the settlement amount equals or exceeds $50,000.00 the Court "shall" appoint a guardian *ad litem*. Fla. Stat. § 744.3025(1)(b). The Eleventh Circuit has held, however, that it is well-established that the appointment of a guardian *ad litem* is a procedural question controlled by Federal Rules of Civil Procedure Rule 17(c). *Burke v. Smith*, 252 F.3d 1260, 1264 (11th Cir. 2001). And Rule 17(c) does not require that a district court appoint a guardian *ad litem* in all cases. *See Roberts v. Ohio Cas. Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958).[2]

**III. Discussion**

The undersigned will first address the issue of whether the appointment of a guardian *ad litem* is necessary because the settlement amount exceeds $50,000. "Unless a conflict of interest exists between the representative and the minor, the Court need not consider the question of whether a guardian ad litem should be appointed." *Burke*, 252 F.3d at 1264. "Generally, when a minor is represented by a parent who is a party to the lawsuit and who has the same interests as the child, there is no inherent conflict of interest." *St. Fort v. United States*, 2022 WL 3136805, at *2 (M.D. Fla. June 8, 2022) (citing *Burke*, 252 F.3d at 1264), *report and recommendation adopted by*, 2022 WL 3136797 (M.D. Fla. June 29, 2022).

---

[2] Fifth Circuit decisions issued prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Here, I.H.'s father brought this lawsuit along with I.H.'s mother, "Iyairis Toledo Fuentes as parent of I.H." Doc. 1 at 1, 2, 14, 17, 18. Plaintiffs represent in the Motion that "there are no adverse interests at play in the settlement, and the full amount of the settlement funds are being awarded to the minor child for the benefit of the minor child." Doc. 32 at 3. Plaintiffs add that neither the father nor Bad Dog Racing, Inc. is receiving a monetary award, and all money is being placed in a guardianship for the minor. *Id.*[3]

While Defendant opposes the Motion to the extent Plaintiffs request that the Court forego the appointment of a guardian *ad litem*, the basis of that objection rests entirely on the amount of settlement. Doc. 34 at 2. Since there is no assertion that a conflict exists between I.H. and his parents' interests and nothing before the Court shows an apparent conflict, the undersigned finds no need to appoint a guardian *ad litem*. *See St. Fort,* 2022 WL 3136085, at *2 (finding that appointment of a guardian *ad litem* was unnecessary because the minor's parent was also a party to the action and "no facts have been presented that would lead the Court to believe that a conflict exists").

Turning to whether the settlement is in the best interests of I.H., this case involves Thomas Hamacher's disability claim under the ADA and I.H.'s own claims as the companion minor to his father. *See* Doc. 1. Plaintiffs explain that I.H.'s claims do not involve personal injury, medical

[3] Plaintiffs represent that I.H.'s interest "can be represented by the child's father, who was also a named Plaintiff in this case" and "[t]he mother does not oppose the settlement for the minor and agrees a Guardian ad Litem is not needed." Doc. 32 at 3.

bills, or the need for future medical care and, instead, relate to his parent's access and the alleged denial of accommodations. *Id.*[4]

In support of the Motion, Plaintiffs submit the Agreement and Amendment, and the documents reflect that the parties have settled the matter for $230,000.00 ($144,750.00 to I.H. and $85,250.00 to Morgan and Morgan, PLLC for attorney fees and costs). Doc. 32-2.[5] Plaintiffs' portion of the settlement will be made payable to Thomas Hamacher "for the Guardianship" of I.H. Doc. 32-2 at 2. While there is a broad general release, Plaintiffs are represented by counsel, and the Agreement reflects that Plaintiffs consulted with their attorney prior to entering into the Agreement. Doc. 32-1 at 6. There is also no evidence of collusion as counsel shared I.H.'s interests in maximizing the settlement. *See id*. at 3.

In sum, the undersigned has reviewed the Agreement and Amendment and finds that the terms are fair, reasonable, and in the best interests of I.H. Overall, the undersigned finds that there is nothing to show that the settlement is fundamentally unfair, unreasonable, or contrary to I.H.'s best interests.

---

[4] Plaintiffs include a claim for intentional infliction of emotional distress on behalf of Thomas Hamacher and I.H., but the remainder of the claims relate to interference with contractual or business relationships, wrongful eviction, and violations of the ADA and the FCRA. *See* Doc. 1.

[5] The Agreement reflects that $145,500.00 would go to I.H. and $84,500.00 would go to Morgan and Morgan. Doc. 32-1 at 3. The parties amended the Agreement to (1) change the name that will be placed on I.H.'s checks; (2) the amount of the first checks due; and (3) modify the full amount due to I.H. and his attorneys. Doc. 32 at 2. With respect to the total amount, the Amendment provides that "[d]ue to the unexpected costs to establish the guardianship and the potential need to hire a Guardian ad Litem to approve the minor's settlement the amounts are being modified." Doc. 32-2. Even though the potential for a guardian *ad litem* became part of the calculation for the total settlement amount, the undersigned finds no reason to reject the settlement based on the parties' decision to factor in the potential cost.

Finally, with respect to Defendant's request that the funds be placed in a restricted account, the Amendment reflects that the funds are for the Guardianship of I.H., and there is nothing before the Court to reflect that Thomas Hamacher will not use the funds for that purpose or that there is otherwise a conflict, collusion, or that the settlement is unreasonable.

## IV. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion (Doc. 32).

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on October 5, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy